UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 18-24336-CIV-MORENO**

MARLEN NOAH,

        Plaintiff,

vs.

ISAAC ASSOR,

        Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS

Plaintiff Marlen Noah commenced this lawsuit against Defendant Isaac Assor, her former landlord, seeking declaratory judgment, injunctive relief, and damages, for unlawful sex discrimination and sexual harassment in violation of the federal Fair Housing Act and the Florida Fair Housing Act, and for intentional infliction of emotion distress. Defendant moved to dismiss the 5-count Complaint for failing to state a claim for relief. For the reasons below, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiff Marlen Noah rented property from Defendant Isaac Assor from March 2016 through March 2017. In this lawsuit against her former landlord, Plaintiff alleges that over the period of her tenancy Defendant engaged in pervasive sexual harassment in violation of her rights to fair housing as protected by the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and the Florida Fair Housing Act, Fla. Stat. § 760.20 *et seq.* Separately, Plaintiff alleges the same conduct constituted intentional infliction of emotional distress. The Court has federal question

jurisdiction over the federal claims pursuant to 28 U.S.C. Sections 1331 and 1343(a)(3), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a).

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the formal sufficiency of the allegations supporting claims for relief. Under Rule 12(b)(6), the Court "may dismiss a claim for 'failure to state a claim upon which relief can be granted.'" *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1275 (S.D. Fla. 2013) (quoting Fed. R. Civ. P. 12(b)(6)). To survive dismissal, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. And those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III. DISCUSSION

The Complaint asserts five claims against Defendant: (1) in Count I, violations of the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)–(2), 3617; (2) in Count II, violation of the Florida Fair Housing Act, Fla. Stat. § 760.37; (3) in Count III, violation of the Florida Fair Housing Act, Fla. Stat. § 760.23(3); (4) in Count IV, violation of the Florida Fair Housing Act, Fla. Stat.

§ 760.23(2); and (5) in Count V, common law intentional infliction of emotional distress. Defendant seeks to dismiss each Count. The Court addresses each Count in turn.

## A. ALLEGED VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT, 42 U.S.C. SECTIONS 3604(f)(1)–(2), 3617

The federal Fair Housing Act provides for a private right of action to any person who is injured by an unlawful discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(A). Plaintiff alleges Defendant engaged in pervasive sexually harassing conduct constituting sex discrimination under the Fair Housing Act. While the parties do not appear to dispute whether sexual harassment is actionable under the Fair Housing Act, the Eleventh Circuit has not expressly decided the issue. *See Tagliaferri v. Winter Park Hous. Auth.*, 486 F. App'x 771, 774 (11th Cir. 2012) (declining to decide whether sexual harassment is actionable under Fair Housing Act, but assuming it was for purposes of assessing factually deficient complaint).

Nevertheless, consistent with the overwhelming weight of federal authority, the Court finds Plaintiff's sexual-harassment based sex discrimination claims are actionable under the Fair Housing Act. *See United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012); *Quigley v. Winter*, 598 F.3d 938, 946 (8th Cir. 2010); *Krueger v. Cuomo*, 115 F.3d 487, 491 (7th Cir. 1997); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008–09 (7th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir. 1993); *Shellhammer v. Lewallen*, 770 F.2d 167 (6th Cir. 1985) (unpublished); *see also*, *West v. DJ Mortg., LLC*, 164 F. Supp. 3d 1393, 1398 (N.D. Ga. 2016); *Salisbury v. Hickman*, 974 F. Supp. 2d 1282, 1290 (E.D. Cal. 2013); *Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360, 364 (D. Md. 2011); *Glover v. Jones*, 522 F. Supp. 2d 496, 503 (W.D.N.Y. 2007); *United States v. Koch*, 352 F. Supp. 2d 970, 980–81 (D. Neb. 2004); *Williams v. Poretsky Mgmt., Inc.*, 955 F. Supp. 490, 495 (D. Md. 1996); *Beliveau v. Caras*, 873 F. Supp. 1393, 1396–97 (C.D. Cal. 1995); *N.Y. ex rel. Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988); *Richards v.*

*Bono*, No. 5:04CV484-OC-10GRJ, 2005 WL 1065141, at *6–7 (M.D. Fla. May 2, 2005); *Grieger v. Sheets*, No. 87 C 6567, 1989 WL 38707, at *2 (N.D. Ill. Apr. 10, 1989).[1] Now the question is whether the Complaint plausibly alleges Fair Housing Act violations.

### 1.) Count I – 42 U.S.C. Section 3617

Plaintiff asserts in Count I that Defendant's conduct constituted "[i]nterference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed . . . based upon sex in the exercise or enjoyment of rights granted or protected by the FHA." (D.E. 1 at ¶ 23(c).) Defendant argues Plaintiff's Section 3617 claim should be dismissed as implausible under *Twombly*.[2]  To state an *interference* claim, Plaintiff must allege: (1) Defendant interfered; (2) with; (a) Plaintiff's exercise of a right under Sections 3603–3606; (b) Plaintiff's enjoyment of a housing right after exercise of that right; or (c) Plaintiff's aid or encouragement to a protected person to exercise or enjoy a housing right; (3) because of discriminatory animus. *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1143–44 (S.D. Fla. 2004) (citations omitted); *see also Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112 (3d Cir. 2017) (listing elements for Section 3617 interference claim).

### (a) "Interference"

---

[1] The Department of Housing and Urban Development, the agency tasked with enforcing the Fair Housing Act, also agrees.  *See* U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, QUESTIONS AND ANSWERS ON SEXUAL HARASSMENT UNDER THE FAIR HOUSING ACT (November 17, 2008), *available at* https://www.hud.gov/sites/documents/QANDASEXUALHARASSMENT.PDF.

[2] Defendant also argues Plaintiff's Section 3617 claim should be dismissed for two additional reasons: (1) "a retaliation claim cannot stand where a plaintiff is allegedly subjected to adverse action *before* she exercises her rights under the FHA" (D.E. 7 at 7 (emphasis in original)); and (2) Plaintiff fails to plead "the required element of her claim[ ] that she was 'ready, willing and able' to renew her lease," *id.* at 4 (citing *Woolington v. 1st Orlando Real Estate Servs., Inc.*, No. 6:11-cv-1107-Orl-31GJK, 2011 WL 3919715, at *2 (M.D. Fla. Sept. 7, 2011)).  But Defendant misconstrues Plaintiff's Section 3617 *interference* claim, for a *retaliation* claim, and in doing so, seeks to dismiss Plaintiff's claim under the incorrect legal standard. Accordingly, these arguments—which derive from the same flaw—necessarily fail.

4

Plaintiff must plead factual matter that, if true, demonstrates Defendant *interfered* with her rights under the Fair Housing Act. Now, "the Eleventh Circuit has not prescribed the precise magnitude of conduct required by § 3617." *Dulworth Family L.P. v. 400 LA Peninsula Condo. Ass'n, Inc.*, No. 2:11-cv-00584-UA-DNF, 2012 WL 11794802, at *3 (M.D. Fla. July 23, 2012). But district courts in the Eleventh Circuit agree that Section 3617 "extends only to discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Lawrence*, 318 F. Supp. 2d at 1144 (quoting *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1235 (M.D. Fla. 2003), *vacated because of settlement*, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003)); *see also West*, 164 F. Supp. 3d at 1398; *Fernandez v. Orlando Hous. Auth.*, No. 6:15-cv-1341-Orl-40DAB, 2016 WL 2784989, at *4 (M.D. Fla. May 13, 2016); *Dulworth Family L.P.*, 2012 WL 11794802, at *3.[3]

Furthermore, Department of Housing and Urban Development regulations and interpretive case law reveal that actionable harassment arises primarily in two contexts: when behavior towards the tenant (1) constitutes *quid pro quo* sexual harassment; or (2) creates a hostile housing environment. *See* 24 C.F.R. § 100.600; *West*, 164 F. Supp. 3d at 1398–1400. *Quid pro quo* harassment is understood as "an unwelcome request or demand to engage in

---

[3] "[I]n the absence of a violation of [S]ections 3603–3606," the standard changes such that "the discriminatory conduct must be pervasive and severe enough to be considered as threatening or violent." *Lawrence*, 318 F. Supp. 2d at 1145 (citing *Gourlay*, 276 F. Supp. 2d at 1236). Here, the Court finds Plaintiff need not allege at the pleading stage that Defendant threatened or exercised violence against her to state a plausible Section 3617 interference claim because, in Counts III and IV, Plaintiff alleges Defendant violated Florida Statute Sections 760.23(2)–(3)—the state companion provisions to Sections 3604(b)–(c). (*See* D.E. 1 at 11–13.) Moreover, the Court is granting Plaintiff leave to amend her complaint to add claims under Sections 3604(b)–(c). *See infra* Sec. III.A.2.

conduct where submission to the request or demand, either explicitly or implicitly, is made a condition related to," among others, the "rental or availability of a dwelling" or "the terms, conditions, or privileges of the sale or rental." 24 C.F.R. § 100.600(a)(1). And "hostile environment harassment" is understood as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with: [t]he availability, sale, rental, or use or enjoyment of a dwelling; [or] the terms, conditions, or privileges of the sale or rental." *Id.* § 100.600(a)(2). Hostile environment harassment "does not require a change in the economic benefits, terms, or conditions of the dwelling," *id.*, and it "can be written, verbal, or other conduct, *and does not require physical contact,*" *id.* § 100.600(b) (emphasis added).[4] To prove hostile environment harassment, the decision maker must look to the "totality of the circumstances," which includes but is not limited to, "the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." *Id.* § 100.600(a)(2)(i)(A).

Here, Plaintiff asserts numerous allegations that, if true, plausibly allege unlawful interference on the basis of sex under the Fair Housing Act, under both *quid pro quo* and hostile environment sexual harassment theories.

### i. *Quid Pro Quo* Sexual Harassment

Beginning with *quid pro quo* harassment, Plaintiff first alleges that after she rejected Defendant's $24,000 per month offer to be his girlfriend by ripping up the check the Defendant presented her, that Defendant "responded by stating that if Plaintiff refused to be his girlfriend, then Plaintiff wouldn't be allowed to renew her lease when it expired." (D.E. 1 at ¶ 16(e).)

---

[4] The Court agrees with the *Chevron* deference analysis conducted by the district court in *Koch*, 352 F. Supp. 2d at 979–80. Because this regulation is based on a permissible construction of Section 3617 and is not contrary to the clear intent of Congress, it is entitled to deference.

Plaintiff also alleges that "[o]n another occasion . . . Defendant attempted to have sex with Plaintiff but was turned down, [and] Defendant advised that Plaintiff would not get her security deposit back." *Id.* at ¶ 16(h). Plaintiff further alleges that after both instances, "Defendant further followed-through with his threat[s] to not" "renew Plaintiff's lease agreement" or "return Plaintiff's security deposit." *Id.* at ¶¶ 17–18.

The Court finds these allegations sufficiently allege *quid pro quo* harassment. That is, Defendant made "an unwelcome request or demand to engage in conduct [*i.e.* be his girlfriend or have sex with him] where submission to the request or demand . . . [was] made a condition related to . . . rental or availability of a dwelling [*i.e.* renewing the lease] . . . or the terms, conditions, or privileges of the sale or rental [*i.e.* recovering a security deposit]." 24 C.F.R. § 100.600(a)(1); *see also West*, 164 F. Supp. 3d at 1400 (denying motion to dismiss plaintiff's *quid pro quo* sexual harassment claim where defendant property manager implicitly conditioned sexual favors on housing repairs); *Richards*, 2005 WL 1065141 at *5 (denying motion to dismiss plaintiff's *quid pro quo* sexual harassment claim where defendant threatened to evict plaintiff and also raised the rent when plaintiff would not acquiesce to sexual demands).

## ii. <u>Hostile Environment Sexual Harassment</u>

Turning to hostile environment harassment, the Complaint sets forth several allegations detailing various harassing conduct, such as sexual propositions, multiple physical trespasses, stalking related behavior, sexually lewd comments, and repeated expressions of jealousy.

Starting with unwelcome sexual propositions, Plaintiff makes the following allegations:

- "Defendant presented Plaintiff a check for Twenty-Four Thousand Dollars ($24,000.00) stating, 'if you will be my girlfriend, you will get this check every month.' . . . Defendant responded by stating that if Plaintiff refused to be his girlfriend, then Plaintiff wouldn't be allowed to renew her lease when it expired in March 2017." (D.E. 1 at ¶ 16(e).)

- "On another occasion, Defendant offered Plaintiff Five Thousand Dollars ($5,000.00) to have sex with him for one (1) hour." *Id.* at ¶ 16(g).

- "On another occasion in which Defendant attempted to have sex with Plaintiff but was turned down, Defendant advised that Plaintiff would not get her security deposit back." *Id.* at ¶ 16(h).

- "In another text message from Defendant to Plaintiff, Defendant offered Plaintiff a part-time job. When Plaintiff inquired as to the nature of the work, Defendant responded that the job is 'One hour,as my secretary,' ... 'One hour as my masseuse.'" *Id.* at ¶ 16(r).

Several courts have sustained similar hostile environment sexual harassment claims under the Fair Housing Act. *See Krueger*, 115 F.3d at 490–92 (affirming administrative law judge's finding defendant interfered with plaintiff's quiet enjoyment where defendant, among other sexual advances, told plaintiff they would be "real close" and asked if they were "going to do good in bed"); *West*, 164 F. Supp. 3d at 1399 (denying motion to dismiss hostile environment sexual harassment claim where plaintiff alleged defendant made unwelcome sexual advances towards plaintiff, and asked plaintiff for sexual pictures in conjunction with performing home repairs); *Salisbury*, 974 F. Supp. 2d at 1292 (denying defendants' motion for summary judgment on plaintiff's hostile environment sexual harassment claim where defendant on multiple occasions told plaintiff he had "urges" for plaintiff while cornering her inside or next to her home).

The Complaint also alleges two instances of Defendant trespassing into Plaintiff's home without her permission. First, Plaintiff explicitly alleges that one day "after Plaintiff had invited her ex-boyfriend over to the Premises, Defendant opened Plaintiff's door to the Premises (was unlocked, but closed), entered the Premises, walked to Plaintiff's bedroom where she was at the time, and screamed at her 'I see James came by to f**k you!'" (D.E. 1 at ¶ 16(k).) Second, Plaintiff inferentially alleges Defendant trespassed into her apartment to recover a newspaper "with a list of names of Plaintiff's friends written by hand," in which the day prior Defendant

"questioned Plaintiff about each male friend on the list only as to their identity and relationship to Plaintiff." *Id.* at ¶ 16(d). Plaintiff further alleges "Defendant had left the newspaper behind, which Plaintiff placed in her bedroom" and that "[w]hen Plaintiff returned the following day, the newspaper had been removed from Plaintiff's Premises." *Id.* And several courts have found sexual harassment claims under the Fair Housing Act where the harassment occurred inside a plaintiff-tenant's property. *See Salisbury*, 974 F. Supp. 2d at 1292 ("The fact that the harassment took place in [plaintiff's] home is even more egregious when viewed in light of the fact that [plaintiff] lives alone and [defendant] trespassed into her home uninvited and completely unexpectedly."); *Quigley v. Winter*, 584 F. Supp. 2d 1153, 1157 (N.D. Iowa 2008) ("A tenant should be able to feel secure in her own home, and there was testimony from [plaintiff] that she was not."), *rev'd and remanded on other grounds*, 598 F.3d at 959 (8th Cir. 2010); *Beliveau*, 873 F. Supp. at 1397 n.1 (denying motion to dismiss hostile environment sexual harassment claim under Fair Housing Act and noting "when the harassment occurs in a woman's home, it is a complete invasion in her life") (citation omitted); *Richards*, 2005 WL 1065141, at *5–7 (denying motion to dismiss sexual harassment based claims under Sections 3604(b)–(c) and 3617 and noting the alleged "behavior is all the more egregious in that it was committed in the Plaintiff's own home").

Next, the Complaint alleges several examples of stalking related behavior by Defendant toward Plaintiff:

- "In an email sent on November 11, 2016, Defendant admitted that he moved in to Unit 702, which he didn't even like, just to be near Plaintiff." (D.E. 1 at ¶ 16(b).)

- "On another occasion, Defendant screamed at Plaintiff that he has hidden cameras set up in the Premises and that he 'sees everything and knows everything.'" *Id.* at ¶ 16(n).

- "In about November 2016, while Plaintiff was sitting in the Premises talking with a man she had been dating, Defendant came to Plaintiff's Premises and knocked on the door. When Plaintiff opened the door, Defendant saw Plaintiff's friend, Daniel Lawrence, sitting on her couch. As a courtesy, Plaintiff introduced Mr. Lawrence to Defendant by using only his first name of 'Daniel.' Defendant smiled and responded 'Daniel Lawrence.' Plaintiff asked how he knew Daniel's full name and Defendant responded by saying that 'he knows everything.'" *Id.* at ¶ 16(s).

The Court finds these stalking allegations particularly important in the context of a landlord-tenant relationship involving hostile environment sexual harassment claims. *See, e.g.*, *Salisbury*, 974 F. Supp. 2d at 1293 (denying summary judgment to defendants and noting that "sexual harassment by someone in a position of authority is more likely to be emotionally and psychologically threatening," such as where the defendant "on-site manager . . . [was] first in-line to respond to any issue that might interfere with [plaintiff's] use and enjoyment of her residence"); *Beliveau*, 873 F. Supp. at 1398 (denying motion to dismiss hostile environment sexual harassment claim under Fair Housing Act and emphasizing harassment came from resident manager, "whose very role was to provide [a] safe environment").

The Complaint also alleges Defendant made other sexually lewd comments and engaged in other harassing behavior. Plaintiff alleges Defendant sent her a text message stating he masturbated to her rejecting him, and sent her another text message telling Plaintiff to masturbate because it "keep[s] you in good conditions…I love you,lol…" (D.E. 1 at ¶¶ 16(i), (j).) In other paragraphs, Plaintiff alleges additional harassing behavior, such as Defendant "scream[ing] at her for her filing [a] complaint" with the condominium association, "scream[ing] at her" after entering her bedroom uninvited, and Defendant commenting to Plaintiff when she would not address him on her way in and out of her residence. *See id.* at ¶¶ 11, 13, 16(k). The Complaint is also replete with allegations of Defendant expressing jealousy over Plaintiff's relationships with other men. Plaintiff alleges that in order to make her jealous, Defendant had various

women deliver junk mail to her residence or call her, and Defendant would "send Plaintiff pictures of girls which he was dating." *Id.* at ¶ 16(c). Plaintiff also alleges Defendant questioned her about her male friends on Facebook, and yelled at her and messaged her about men visiting her residence. *Id.* at ¶¶ 16(d), (k)–(m), (p).

In short, looking at the "totality of the circumstances," 24 C.F.R. § 100.600(a)(2)(i), and taking Plaintiff's allegations as true as the Court must, the Court finds Plaintiff sufficiently pleads that Defendant's alleged conduct—*i.e.* the sexual propositions followed by completed threats, the physical trespasses into her home, the stalking, the sexually lewd comments, and the repeated expressions of jealousy—amounts to both *quid pro quo* and hostile environment sexual harassment that was "so severe or pervasive that it [had] the effect of causing [Plaintiff] to abandon the exercise of . . . her housing rights." *Lawrence*, 318 F. Supp. 2d at 1144 (citation omitted); *see also supra* (cases sustaining *quid pro quo* and hostile environment sexual harassment claims under Fair Housing Act).

Lastly, Plaintiff's failure to allege Defendant physically touched or harmed her, or threatened to touch or harm her does not bar her Fair Housing Act claim, because the statutory structure,[5] regulations promulgated by the Department of Housing and Urban Development,[6] and interpretive case law[7] are in accord that unlawful interference under the Fair Housing Act does

---

[5] Because Congress expressly required a showing of force or threat of force in the criminal provision of the Fair Housing Act (42 U.S.C. § 3631), but not in the civil liability sections, the Court presumes Congress did not intend to require a showing of force or threat of force under Section 3617. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) (ruling that when "Congress includes particular language in one section of a statute but omits it in another" it is "'presume[d]' that Congress intended a difference in meaning.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *compare* 42 U.S.C. § 3631, *with* 42 U.S.C. § 3617.

[6] *See* 24 C.F.R. § 100.600(b) ("Harassment can be written, verbal, or other conduct, *and does not require physical contact*.") (emphasis added).

[7] At least two federal Courts of Appeals agree. *See, e.g., Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) ("[Section] 3617 does not require a showing of force or

not require force, or threat of force.

### (b) "In the Exercise or Enjoyment of"

Plaintiff must also allege Defendant interfered with her exercise of a right under Sections 3603–3606. *Lawrence*, 318 F. Supp. 2d at 1143–44 (citations omitted). Here, Plaintiff alleges Defendant's conduct interfered with the exercise and enjoyment of her right under the Fair Housing Act to be "protect[ed] from unlawful discrimination because of her sex." (D.E. 1 at ¶ 4.) And by also alleging in Counts III and IV violations of Florida Statute Sections 760.23(2)–(3), the identical state companion provisions to 42 U.S.C. Sections 3604(b)–(c), the Court finds Plaintiff adequately alleges interference with the exercise of her rights granted and protected Sections 3604(b)–(c).[8] *See Richards*, 2005 WL 1065141, at *6 (finding actionable a sexual harassment based interference claim under Section 3617 where plaintiff alleged violation of her right under Section 3604(b) to enjoy her rental property free from sexual discrimination).

Moreover, Plaintiff's Section 3617 interference claim is not barred simply because the alleged violations in Counts III and IV concern post-acquisition housing rights. *See Revock*, 853 F.3d at 112 (finding Section 3617 "claim may arise before or . . . after a plaintiff acquires housing") (citing *Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519, 529 (6th Cir. 2013) (permitting post-acquisition Section 3617 claim to proceed to trial); *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009) (ruling "§ 3617 reaches a broader range of post-acquisition conduct")); *Richards*, 2005 WL 1065141, at *6 n.36 ("There is ample support for the position that § 3617 reaches post-acquisition conduct."); *Gourlay*, 276 F. Supp. 2d at 1235 (holding

---

violence for coercion, interference, intimidation, or threats to give rise to liability."); *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994) ("Section 3617 is not limited to those who used some sort of 'potent force or duress.'").

[8] Moreover, the Court is granting Plaintiff leave to amend the Complaint to add claims under Sections 3604(b)–(c), in order to correct an inadvertent pleading error. *See supra* Sec.III.A.2.

"Section 3617 regulates discriminatory conduct before, during, or after a sale or rental of a dwelling").

### (c) "Discriminatory Animus"

Finally, Plaintiff must allege factual matter that if true would demonstrate discriminatory animus by Defendant. *Lawrence*, 318 F. Supp. 2d at 1143–44 (citation omitted); *cf. Sofarelli v. Pinellas Cty.*, 931 F.2d 718, 722 (requiring plaintiffs to demonstrate "that race played some role" in defendants' actions that allegedly violated Section 3617). The Eleventh Circuit has explained that "the act of sexual harassment itself creates an inference that the harasser harbors a sexually discriminatory animus towards the plaintiff" and that "[w]hen a person 'sexually harasses' another, *i.e.*, makes comments or advances of an erotic or sexual nature, we infer that 'the harasser [is making] advances towards the victim because the victim is a member of the gender the harasser prefers.'" *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1246 (11th Cir. 1998) (quoting *Fredette v. BVP Mgmt. Assocs.*, 112 F.3d 1503, 1505 (11th Cir. 1997), *cert. denied*, 523 U.S. 1003 (1998)).

Here, as discussed above, the Complaint sets forth numerous allegations detailing sexually harassing behavior by Defendant. Additionally, Plaintiff alleges: she "belongs to a class of persons whom the FHA protects from unlawful discrimination because of her sex (female)"; that "Defendant was subject, at all times relevant, to the anti-harassment and anti-discrimination provisions of the FHA"; and that in June 2016 "a pervasive pattern of sexual harassment was initiated by Defendant targeted to and upon the person of Plaintiff." (D.E. 1 at ¶¶ 4, 7, 8.) Plaintiff further alleges Defendant's conduct was "intentional[], willful[], and in disregard" for her rights." *Id.* at ¶ 24. Taking the allegations as true, the reasonable inference is that Defendant acted with discriminatory intent; that is, Defendant harassed Plaintiff because she "is a member

13

of the gender [Defendant] prefers." *Llampallas*, 163 F.3d at 1246 (quoting *Fredette*, 112 F.3d at 1505); *see also Iqbal*, 556 U.S. at 678 (courts can "draw the reasonable inference that the defendant is liable for the misconduct alleged"). Therefore, the Court finds Plaintiff plausibly alleges Defendant acted with discriminatory animus. *See West*, 164 F. Supp. 3d at 1401 (denying motion to dismiss and finding discriminatory animus where defendant passively refused to repair furnace during winter after plaintiff complained that defendant sexually harassed her).

The Court emphasizes that at this stage, Plaintiff's allegations are the ones given weight. Defendant will surely have his chance to present evidence at summary judgment or trial in support of his defenses. For now, taking Plaintiff's *quid pro quo* and hostile environment sexual harassment allegations as true, as the Court must, the Court finds Plaintiff has plausibly alleged a Section 3617 interference claim. Therefore, Defendant's Motion to Dismiss this claim is **DENIED**.

### 2.) Count I – 42 U.S.C. Sections 3604(f)(1)–(2)

Plaintiff also asserts in Count I that Defendant violated 42 U.S.C. Sections 3604(f)(1)–(2), which makes it unlawful to discriminate in renting a dwelling, or in the provision of services or facilities in connection with a dwelling, "because of a handicap." Defendant correctly argues Plaintiff's claims under Sections 3604(f)(1)–(2) should be dismissed because Plaintiff "does not allege that she is disabled." (D.E. 7 at 5.) Indeed, Plaintiff acknowledges "that some sections of the [Fair Housing Act] were not properly identified and cited to by Plaintiff in her Complaint." (D.E. 8 at 3.) Plaintiff asserts she intended to allege violations of 42 U.S.C. Sections 3604(b)–(c), and thus asks the Court for leave "to file an amended complaint to cure the issues." *Id.* Because Plaintiff's pleading error was inadvertent, the Court **GRANTS** her request for leave to

correct this mistake. *See Montes v. M & M Mgmt. Co.*, No. 15-80142-CIV-MARRA/MATTHEWMAN, 2015 WL 11254703, at *2 (S.D. Fla. May 12, 2015) ("Rule 15(a) provides that leave to amend should be freely given . . . ."). Defendant's Motion to Dismiss the claims under Sections 3604(f)(1)–(2) is accordingly **GRANTED**.

## B. ALLEGED VIOLATIONS OF THE FLORIDA FAIR HOUSING ACT

Plaintiff brings three Counts alleging Florida Fair Housing Act violations: in Count II, Fla. Stat. § 760.37; in Count III, Fla. Stat. § 760.23(3); and in Count VI, Fla. Stat. § 760.23(2). The Florida Fair Housing Act is the state counterpart to the federal Fair Housing Act. Like the federal statute, the Florida Fair Housing Act provides a private right of action for "[a]ny person who claims to have been injured by a discriminatory housing practice." Fla. Stat. § 760.34(1). Furthermore, the Florida Fair Housing Act "is patterned after the [Fair Housing Act] and courts have recognized that it is to be construed consistently with federal law." *Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV, 2010 WL 427436, at *2 (S.D. Fla. Feb. 1, 2010) (citing *Loren v. Sasser*, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002) ("The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act . . . ."); *Dornbach v. Holley*, 854 So. 2d 211, 213 (Fla. Dist. Ct. App. 2002) ("[W]e find the application of the [Florida Fair Housing Act] by the federal courts to be instructive and persuasive.")). Accordingly, the Court's discussion treats interchangeably the corresponding provisions of the federal and Florida fair housing statutes,[9] and case law interpreting the same. The Court addresses each Count in turn.

### 1.) Count II – Fla. Stat. Section 760.37

---

[9] The relevant corresponding provisions are: 42 U.S.C. § 3604(b) *and* Fla. Stat. § 760.23(2); 42 U.S.C. § 3604(c) *and* Fla. Stat. § 760.23(3); and 42 U.S.C. § 3617 *and* Fla. Stat. § 760.37.

In Count II, Plaintiff alleges Defendant violated Florida Statute Section 760.37. Like its federal counterpart, Section 760.37 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under" certain sections of the Florida Fair Housing Act.

Because Section 760.37 is identical to Section 3617, the Court finds Plaintiff states a plausible interference claim under Section 760.37 for the same reasons discussed above. The Court also rejects Defendant's arguments to the contrary for the same reasons his Section 3617 arguments fail: Defendant misconstrues Plaintiff's *interference* claim in Count II as a *retaliation* claim. *See supra* n.2. As Plaintiff makes clear, she "has not made any such claims that Defendant took retaliatory and adverse action against Plaintiff for filing her claim." (D.E. 8 at 5.) Accordingly, Defendant's Motion to Dismiss Count II is therefore **DENIED**.

### 2.) Count III – Fla. Stat. Section 760.23(3)

In Count III, Plaintiff asserts Defendant violated Florida Statute Section 760.23(3), which makes it unlawful to "make, print, or publish . . . any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . sex . . . or an intention to make any such preference, limitation, or discrimination." To state a claim under Section 760.23(3), Plaintiff must allege factual matter showing: (1) Defendant made a statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on the basis of a protected class. *Hous. Opportunities Project for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.*, No. 12-60172-CIV, 2012 WL 4193969, at *9 (S.D. Fla. Sept. 19, 2012) (citation omitted).

Plaintiff alleges Defendant sent her text messages and e-mails that "confirmed the intent or expressed preference or limitation based on Plaintiff being in a protected class, as a female." (D.E. 1 at 11.) Plaintiff further alleges Defendant orally told her "that if Plaintiff refused to be his girlfriend, then Plaintiff wouldn't be allowed to renew her lease when it expired in March 2017." *Id.* at ¶ 16(e). Defendant argues Count III should be dismissed because Plaintiff fails to plead factual matter showing any statements were made "with respect to the rental of a dwelling." As explained below, Plaintiff adequately states a Section 760.23(3) claim.

First, oral statements are actionable under Section 3604(c). *See Richards*, 2005 WL 1065141, at *7 (sustaining Section 3604(c) claim premised on orally expressed sexually harassing statements); *see also* 24 C.F.R. § 100.75(b) ("The prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in" renting a dwelling).

Second, the Court disagrees with Defendant's argument that the alleged statements were "***unrelated***" to the decisional process to rent the property to Plaintiff." (D.E. 9 at 5 (emphasis in original).) By its terms, the alleged communication—"that if Plaintiff refused to be his girlfriend, then Plaintiff wouldn't be allowed to renew her lease when it expired" (D.E. 1 at ¶ 16(e))—could not be more directly related to the decisional process about whether to renew Plaintiff's lease in the future (*i.e.* "with respect to the rental of [the] dwelling"). As alleged, Defendant's statement imposed a condition—that Plaintiff be Defendant's girlfriend—upon Plaintiff renewing her lease on the dwelling she rented from Defendant at the time of the alleged statement. This conclusion is buttressed by several other alleged instances of Defendant's sexually harassing behavior toward Plaintiff (some of which were directly rebuffed by Plaintiff), which are all sewn together by Plaintiff's allegation that "Defendant followed-through with his threat to not renew Plaintiff's lease agreement when it became expired in March 2017." (*Id.* at

¶ 17.) Taken as true, the reasonable inference is that Defendant declined renewing the lease because Plaintiff would not have sexual relations or enter into a relationship with Defendant.

Next, Defendant argues Plaintiff fails to state a claim because his statements "occurred *after* Defendant already rented the property to Plaintiff." (D.E. 9 at 5 (emphasis in original).) Defendant suggests the Florida Fair Housing Act only protects against discriminatory statements prior to a sale or rental. But this argument has already been rejected because, unlike a sale, a "'rental' contemplates an ongoing relationship." *Richards*, 2005 WL 1065141, at *2–5, 7 (ruling Sections 3604(b)–(c) applied to post-acquisition conduct under rental agreement and rejecting defendants' argument to the contrary); *see also The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009) ("[W]e conclude that the FHA reaches post-acquisition discrimination."); *Smith v. Zacco*, No. 5:10-cv-360-TJC-JRK, 2011 WL 12450317, at *5–7 (M.D. Fla. Mar. 8, 2011) (sustaining Section 3604 claim and rejecting argument Section 3604 applied only to "housing discrimination arising and occurring subsequent to the sale or rental").

In *Richards v. Bono*, the district court astutely observed "[i]t would be anomalous to say . . . that a landlord is prohibited from refusing to rent a dwelling on the basis of sex . . . but would not be prohibited from raising the rent mid-tenancy because of the sex of the tenant." 2005 WL 1065141, at *3. By analogy here, it would be anomalous to say Defendant was prohibited from conditioning Plaintiff's first lease agreement on being Defendant's girlfriend, but Defendant would not be prohibited from conditioning a lease renewal upon the same condition. Imposing such conditions on continued occupancy of a rental property is undoubtedly the kind of sexual harassment the Florida Fair Housing Act prohibits. *Id.* at *7 (sustaining Section 3604(c) claim alleging "submission to [defendant's] sexual advances was a condition of

continued occupancy"). In short, the reasonable inference is Defendant's statement was directed toward his decision to decline renewing the lease. Thus, the second element is adequately pleaded.

Third, as discussed above, Plaintiff's allegations of several instances of sexually harassing conduct by Defendant are sufficient to plead discriminatory animus. *See supra* Sec. III.A.1.c. And these allegations are cap-stoned by the allegation Defendant followed through with his threat not to renew Plaintiff's lease upon expiration. Accordingly, the Complaint adequately pleads the final Section 760.23(3) claim element: that Defendant discriminated against Plaintiff on the basis of sex in his decision not to renew Plaintiff's lease.

Finally, Defendant argues "it is implausible that Plaintiff wished to remain in this allegedly 'hostile environment' for another year" and that the implausibility of Plaintiff's claim is highlighted by Plaintiff's failure "to even allege that she attempted to renew the lease but was refused." (D.E. 9 at 5.) This argument is amiss. The plausibility standard applies to the elements of a claim—that is, Plaintiff must plead "sufficient factual matter" to make her Section 760.23(3) claim "plausible on its face." *Iqbal*, 556 U.S. at 678. But Plaintiff is not required to plead that she intended, or even took action toward renewing her lease to state a claim under Section 760.23(3) because this provision imposes liability for the discriminatory "*mak[ing], print[ing], or publish[ing] . . . [of] any notice, statement, or advertisement* with respect to the sale or rental of a dwelling . . . based on . . . sex." Fla. Stat. § 760.23(3) (emphasis added). So, it is irrelevant at the pleading stage whether it is plausible that Plaintiff "wished to remain in [an] allegedly 'hostile environment'" for purposes of stating a Section 760.23(3) claim. Once Plaintiff alleged Defendant made sexually harassing statements concerning the rental, she adequately pleaded her claim. Defendant's motion to dismiss Count III is therefore **DENIED**.

### 3.) <u>Count IV – Fla. Stat. Section 760.23(2)</u>

Plaintiff's next claim is that Defendant violated Florida Statute Section 760.23(2), which makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex." To state a claim under Section 760.23(2), Plaintiff must plead facts showing that: (1) Plaintiff is a member of a protected class; (2) the Defendant was aware of it; (3) Plaintiff was ready, willing, and able to rent the apartment; and (4) Defendant refused to allow her to do so. *See Woolington*, 2011 WL 3919715, at *2.

Like his Count III argument, Defendant argues Count IV should be dismissed because Plaintiff did not plead "the required element of her claims that she was 'ready, willing and able' to renew her lease." (D.E. 7 at 4.) This time, Defendant is correct.

Without directing the Court to a specific supporting allegation in the Complaint, Plaintiff argues she "was indeed qualified, ready, willing, and able to continue occupancy and renew the lease at the time that Defendant advised Plaintiff that he would not renew Plaintiff's lease due to the reasons alleged in the Complaint." (D.E. 8 at 4.) Reviewing the Complaint, the Court finds no allegation that Plaintiff was "ready, willing, and able" to continue occupancy when the lease expired. Plaintiff alleges she "was current on rent at th[e] time" Defendant verbally informed her that he "wanted Plaintiff to vacate the Premises once the lease expired." (D.E. 1 at ¶¶ 44–45.) But capacity to renew a lease (*i.e.* "able") is not the same as expressing intent (*i.e.* "ready" and "willing") to continue occupancy. Moreover, Plaintiff "cannot amend [her] complaint in a response to [Defendant's] motion to dismiss." *See Tsavaris v. Pfizer, Inc.*, No. 1:15-cv-21826-KMM, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Accordingly, because Plaintiff fails to plead the "ready, willing, and able" element of her Section 760.23(2) claim, Defendant's motion to dismiss Count IV is **GRANTED**.[10] Notwithstanding, Count IV is **DISMISSED** without prejudice, as Plaintiff's request for leave of Court to amend her Complaint to "more specifically plead this violation" is **GRANTED**. (*See* D.E. 8 at 4; *see also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)).)

## C. COUNT V – COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, Plaintiff claims Defendant intentionally inflicted severe emotional distress upon her. To state such a claim under Florida law, Plaintiff must allege: (1) Defendant engaged in intentional or reckless conduct; (2) the conduct was "outrageous"; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *See Hart v. United States*, 894

---

[10] Dismissing Plaintiff's Section 760.23(2) claim for failing to plead Plaintiff was "ready, willing, and able" is not inconsistent with rejecting Defendant's argument that Plaintiff's Section 760.23(3) claim should be dismissed on the same grounds. Section 760.23(2) targets narrower and different behavior than Section 760.23(3): the *former* targets only the discriminatory nature of the "terms" and "conditions" of the *transaction* to sell or rent a dwelling, while the *latter* targets broader conduct, namely, discriminatory "notice[s], statement[s], or advertisement[s]" made in the *management* of selling or renting a dwelling. *Compare* Fla. Stat. § 760.23(2) (making unlawful "discriminat[ion] against any person *in the terms, conditions, or privileges of sale or rental* of a dwelling . . . .") (emphasis added), *with* Fla. Stat. § 760.23(3) (making unlawful the "mak[ing], print[ing], or publish[ing] . . . *[of] any notice, statement, or advertisement with respect to the sale or rental* of a dwelling . . . .") (emphasis added). This is why being "ready, willing, and able" is a required element of a Section 760.23(2) claim, but not a Section 760.23(3) claim. This is also consistent with the Court's Section 3617 analysis concerning *quid pro quo* harassment. Section 3617 protects against unlawful "coerc[ion], intimidat[ion], threat[s to], or interfer[ence with]" fair housing rights. So, Defendant could still interfere with Plaintiff's housing rights through sexually harassing behavior and conditioning a future lease renewal on sexual relations, even without Plaintiff alleging she was "ready, willing, and able" to renew the lease.

F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (recognizing tort of intentional infliction of emotional distress under Florida law)).

Defendant argues Count V should be dismissed because "the 'outrageous conduct' alleged by Plaintiff falls woefully short of the extremely high standard used to assess claims for intentional infliction of emotional distress." (D.E. 7 at 9.) Plaintiff responds—without citation to authority—that "a jury could reasonably rule that Defendant acted with outrageous conduct" and "[s]uch a determination . . . is to be made by the trier of [fact] after hearing the evidence on Count V." (D.E. 8 at 5–6.) Plaintiff is incorrect. What constitutes "outrageous" conduct is a question of law for the court to resolve—not a question of fact for a jury. *See Hamon v. Casa Casuarina, LLC*, No. 10-20457-CIV-MORENO, 2010 WL 11442754, at *2 (S.D. Fla. June 18, 2010) (Moreno, J.) (citing *De la Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943 (Fla. 3d Dist. Ct. App. 2002)); *Akright v. Just Travel, Inc.*, No. 05-61133-CIV-MORENO, 2006 WL 8431506, at *3 (S.D. Fla. Mar. 23, 2006) (Moreno, J.) (citing *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. 4th Dist. Ct. App. 1990)).

In *Metro. Life Ins. Co.*, the Florida Supreme Court adopted the Restatement (Second) of Torts's explanation of outrageous conduct:

> Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the action, and leave him to exclaim, "Outrageous!"

*Metro. Life Ins. Co.*, 467 So. 2d at 278–79 (quoting Restatement (Second) of Torts, § 46 cmt. d (1965)) (emphasis added). "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018) (citations omitted). And courts

uphold these claims "only in 'extremely rare circumstances.'" *Id.* (quoting *Triana v. Diaz*, 12-21309-CIV-KING, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014)).

Here, there is no doubt the alleged sexually harassing conduct, if true, is more than inappropriate and offensive. But even when taking all Plaintiff's allegations as true and considering them in the light most favorable to Plaintiff, under Florida law, the conduct alleged does not rise to one of the "extremely rare circumstances" where intentional infliction of emotional distress claims are upheld. *Id.* "The touchstone of these cases is the presence of relentless physical, as well as verbal, harassment." *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1559 (S.D. Fla. 1996). Critically, Plaintiff does not allege Defendant physically touched or harmed her (inappropriately or otherwise), or threatened to touch or harm her. The fact is that courts dismiss intentional infliction of emotional distress claims alleging offensive and unwelcome sexual advances—even when those advances are coupled with unwanted offensive physical touching. *See, e.g., Ball v. Heilig-Meyers Furniture Co.*, 35 F. Supp. 2d 1371, 1376 (M.D. Fla. 1999) (granting motion to dismiss intentional infliction of emotional distress claim under Florida law where plaintiff alleged defendant engaged in unwelcome, unwanted sexual advances, use of vulgar and obscene language and physical contact with plaintiff's posterior and her breasts); *Blount v. Sterling Healthcare Grp., Inc.*, 934 F. Supp. 1365, 1371 (S.D. Fla. 1996) (granting motion to dismiss intentional infliction of emotional distress claim where plaintiff alleged that in addition to defendant making sexually and racially explicit jokes and suggestive comments, defendant rubbed plaintiff's breasts with his arm, hugged her tightly, and massaged the back of her head); *Howry v. Nisus, Inc.*, 910 F. Supp. 576, 580–81 (M.D. Fla. 1995) (granting motion to dismiss intentional infliction of emotional distress

claim where plaintiff alleged the defendant physically touched the plaintiff and himself in a suggestive manner, used obscene language, and commented on sex organs).

Moreover, Plaintiff does not provide the Court with a single authority sustaining an intentional infliction of emotional distress claim under similar facts. Indeed, Plaintiff's sparse response does not explain why or how her allegations sufficiently state an intentional infliction of emotional distress claim. Nor does Plaintiff's response attempt to distinguish or rebut authorities Defendant proffers in support of dismissal. Accordingly, the Court finds Plaintiff's allegations do not meet the "extremely high standard" to state an intentional infliction of emotional distress claim under Florida law. *Casado*, 340 F. Supp. 3d at 1320 (citation omitted). Therefore, Defendant's motion to dismiss Count V is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, it is

**ADJUDGED** that Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Defendant's Motion to Dismiss is **DENIED** as to Count I (§ 3617 claim only), and Counts II and III;

(2) Defendant's Motion to Dismiss is **GRANTED** as to Count I (§§ 3604(f)(1)–(2) claims only), Count IV, and Count V. Count I (§§ 3604(f)(1)–(2)) and Count V are **DISMISSED WITH PREJUDICE**. Count IV is **DISMISSED WITHOUT PREJUDICE**;

(3) Furthermore, Plaintiff's requests for leave to amend her Complaint to add claims under §§ 3604(b)–(c) and to "more specifically plead" Count IV are **GRANTED**;

(4) Plaintiff must file an amended complaint, if she elects to do so, no later than **March**

**22, 2019**; and

(5) Should Plaintiff file an amended complaint, Defendant must answer or respond to the
    amended complaint no later than fourteen (14) days after receiving service of the
    amended complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _____ of March 2019.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record